**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Walter W. William Cartwright, III, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM, DENYING MOTION FOR RECUSAL, AND GRANTING MOTION TO WITHDRAW CONSENT** |
| vs. | ) | |
| | ) | |
| Jane Doe, Medical NP, | ) | |
| | ) | |
| Defendant. | ) | Case No. 1:23-cv-013 |

---

On February 28, 2023, Plaintiff filed a "Motion for Appointment of Counsel, Guardian Ad Litem or Conservator Under Rule 17(c) and Motion to Stay Litigation." (Doc. No. 15). On March 3, 2023, he filed a "Motion to Withdraw Consent to Have Case Handled by Magistrate Judge" and "Motion for Recusal and Motion to Assign a Different Judge and Motion to Transfer Venue." (Doc. Nos. 17 and 18). For the reasons that follow, the "Motion for Appointment of Counsel, Guardian Ad Litem or Conservator Under Rule 17(c) and Motion to Stay Litigation" and "Motion for Recusal and Motion to Assign a Different Judge and Motion to Transfer Venue" are denied. The "Motion to Withdraw Consent to Have Case Handled by Magistrate Judge" is granted.

## I. BACKGROUND

Plaintiff is a pretrial detainee now in Marshals Service custody at the Ward County Detention Center. He initiated the above-captioned action pro se and in forma pauperis on January 18, 2023, against an unnamed defendant. (Doc. Nos. 1-3, and 7). On January 26, 2023, he filed notice of his consent to the magistrate judge's exercise of jurisdiction. (Doc. No. 9).

The undersigned screened Plaintiff's complaint as required by 28 U.S.C. § 1915A. Determining that Plaintiff had failed to assert cognizable constitutional or federal statutory claims based upon the facts alleged in his complaint and that he could not proceed against an unnamed

Defendant, the undersigned issued an order on February 13, 2023, giving him until March 20, 2023, to either file an amended complaint or show cause why his original complaint should not be dismissed for failure to state a claim for which relief can be granted. (Doc. No. 11).

On February 23, 2023, Plaintiff filed a "Motion for Appointed Counsel." (Doc. No. 12). In the caption of his motion he substituted Chantel Hillstead in place of Jane Doe as the named defendant. In the body of his motion, he asserted that he requires the assistance of counsel due to his diminished capacity. For support, he provided a letter from a doctor who had examined him in 2017. (Doc. No. 13). In this letter, the doctor expressed his opinion regarding Plaintiff's competency to stand trial in two criminal cases in the State of Missouri. (Id.).

On February 27, 2023, the undersigned issued an order denying Plaintiff's motion without prejudice with the following explanation:

> Rule 17(c) of the Federal Rules of Civil Procedure provides in relevant part that "[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2). "Although courts generally need not inquire sua sponte into a pro se litigant's mental competence, a district court must consider invoking Rule 17(c) when it receives evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent or verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." Spartz v. Krehbiel, No. 19-CV-2163 (PJS/ECW), 2020 WL 1910557, at *2 (D. Minn. Apr. 20, 2020) (internal quotation marks omitted); see also Powell v. Symons, 680 F.3d 301, 307 (3d Cir. 2012) (district court abused its discretion in failing to consider applying Rule 17(c) when record contained "verifiable evidence" of incompetence).
>
> Here, Plaintiff has not represented to this Court that he is "incompetent" within the meaning of Rule 17(c). Nor has he requested the appointment of a guardian ad litem. Rather, he has requested the appointment of counsel to assist him in drafting an amended complaint.
>
> Moreover, Plaintiff has not presented evidence to this court that he has been adjudicated incompetent or that he is presently receiving treatment for any mental illness or condition that would render him legally incompetent. What he has provided the court is an opinion issued by a doctor in 2017 in the context of two

> pending criminal cases. At present it is unclear what, if any, weight this opinion was given in these two cases.
>
> Plaintiff's filings to date suggest that he is capable of advocating on his own behalf. The materials that Plaintiff has filed to supplement his complaint evince that he was able to familiarize himself with the Ward County Detention Center's grievance process, used it, and, when dissatisfied with the response, initiate this action and then file the instant motion. (Doc. Nos. 1 through 3, 7, 8, and 12). In the instant motion he addressed one of the pleading deficiencies identified by the court in its February 13, 2023, order–the defendant's identity.
>
> Accordingly, the Court finds nothing currently in the record that demonstrates Plaintiff is legally incompetent for purposes of Rule 17(c) such that appointment of a guardian ad litem is required. This does not end the court's inquiry, however.
>
> While indigent civil litigants do not have a constitutional or statutory right to appointed counsel, the court "may request an attorney to represent any person unable to afford counsel" and has considerable discretion when deciding whether to do so. Ward v. Smith, 721 F.3d 940, 942-943 (8th Cir. 2013) (quoting 28 U.S.C. § 1915(e)(1)). A number of factors are relevant when deciding whether to appoint counsel, including "the factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the legal issues." Abdullah v. Gunter, 949 F.2d 1032, 1035 (8th Cir. 1991). Appointment of counsel should be given serious consideration if the plaintiff has not alleged a frivolous or malicious claim. Id.
>
> Having considered these factors, the court is not presently inclined to appoint counsel to represent Plaintiff. First, this case does not appear to be factually or legally complex. Second, it appears that Plaintiff has the ability to investigate the facts; it is apparent from the record that he has been able to communicate with staff and otherwise articulate his concerns to staff and process their responses as demonstrated by the copies of the various grievances and grievance appeals that he submitted to staff and which he has attached to his original complaint as exhibits. (Doc. Nos. 3 and 8). Third, Plaintiff's citation to and reliance on case law and the federal rules of civil procedure in the instant motion suggests that he has access to legal resources and the ability to conduct legal research. Fourth, it appears that Plaintiff comprehends what the court has asked of him and is capable of marshaling a response as he has appeared to have ascertained the identity of Jane Doe and named her in the caption of his instant motion.

(Doc. No. 14).

On February 28, 2023, Plaintiff filed a "Motion for Appointment of Counsel, Guardian Ad Litem or Conservator Under Rule 17(c) and Motion to Stay Litigation." (Doc. No. 15). On March 3, 2023, he filed a "Motion to Withdraw Consent to Have Case Handled by Magistrate Judge" and

"Motion for Recusal and Motion to Assign a Different Judge and Motion to Transfer Venue." (Doc. Nos. 17 and 18).

## II. DISCUSSION

### A. Substitution of Named Defendant

As noted above, Plaintiff identified Defendant Jane Doe as Chantel Hillstead ("Hillstead") in the caption of his most recent motions. Accordingly, Hillstead shall be substituted in place of Jane Doe as the named defendant and the case caption shall be amended accordingly. The undersigned shall now turn to Plaintiff's pending motions.

### B. "Motion for Recusal and Motion to Assign a Different Judge and Motion to Transfer Venue"

The undersigned previously issued a report recommending the dismissal of a different civil action filed by Plaintiff. See Cartwright v. Krabbenhoft, et al., Case No. 1:22-cv-025 (D.N.D.) (hereafter referred to as "Cartwright I"). The undersigned also recently ordered Defendant detained pending trial in his federal criminal case. See United States v. Cartwright, Case No. 1:22-cr-081 (D.N.D). As noted above, the undersigned recently issued an order to show cause and an order denying Plaintiff's request for court-appointed counsel without prejudice in this case. (Doc. Nos. 11, 15).

In his motion for recusal, Plaintiff asserts that the undersigned various rulings and/or recommendations evince the undersigned's bias against him, which requires both the undersigned's recusal and a change of venue to a different division.

> 1.)The Honorable Judge Clare R. Hochhalter was assigned to both civil actions that Mr. Cartwright had initiated in the Federal Court and has been handling matters in Mr. Cartwright's Federal criminal case. He held Mr. Cartwright's detention hearing on February 23, 2023 and had recently recommended the dismissal of his 1983 claim, case no. 1:22-cv-025. HE's also taking action in Mr. Cartwright's other 1983

claim, case no. 1:23-cv-013.

2.) The Honorable Judge Clare R. Hochhalter mentioned Mr. Cartwright's Federal Criminal case in his report and recommendation pertaining to civil case No. 1:22-cv-025. His direct participation in both Mr. Cartwright's criminal and civil cases, along with comments create the idea of a bias opinion of Mr. Cartwright and he should recuse himself from all actions either brought by Mr. Cartwright or brought by the Government.

3.) The Honorable Judge Clare R. Hochhalter controlled whether or not Mr. Cartwright was released on pretrial release in criminal case no. 1:22-cr-081. Mr. Cartwright's inmate status means restrictions are placed on him during the litigation in both of his 1983 claims. If the Honorable Judge Clare R. Hochhalter were to release Mr. Cartwright, he would also be lifting the restrictions placed on Mr. Cartwright by the P.L.R.A.

4.) The Honorable Judge Clare R. Hochhalter cannot say his decision not to release Mr. Cartwright from Federal custody was not effected by his direct knowledge of Mr. Cartwright's inmate status and what it would mean in regards to how the courts would have to handle his civil actions if release and no longer under the P.L.R.A.

5.) In civil action 1:23-cv-013 the defendant has not been served a summons to appear in court and has not gave consent for the Magistrate to handle that matter. Mr. Cartwright had previously gave consent for this matter to be handled by the Magistrate but demands that his consent be withdrawn.

6.) The relevant statute and rule stress that consent to having a case handled by a magistrate judge must be voluntary. 28 U.S.C. § 636(c)(2); accord Rule 73(B).

7.) The Honorable Judge Clare R. Hochhalter's conduct displays a deep seated favoritism to all the defendants in Mr. Cartwright's civil actions. He has voided following relevant law under Rule 17(c)(2) that pertains to appointing counsel, guardian ad litem or a conservator to protect the rights of Mr. Cartwright who has been found incompetent. He's aware of this rule and has proceeded to handle Mr. Cartwright's case without giving Mr. Cartwright the benefit of the doubt and should of recused himself whenever he received information from extra judicial sources. During Mr. Cartwight's detention hearing for his Federal case Jeremy Ensrud the Federal attorney for the government informed the Honorable Judge Clare R. Hochhalter that Mr. Cartwright has 20 years of criminal history, a crime of violence, substance abuse problems that have not been addressed, and that went on and on.

8.) This would lead a reasonable person to question the Honorable Judge Clare R. Hochhalter's impartiality. He's developed a bias from extra judicial sources and continues to display an antagonism opinion toward Mr. Cartwright by denying him

> relief in his civil rights and denying him pretrial release in his Federal case based on information from other sources and not relevant [illegible].
>
> 9.) The Honorable Judge Clare R. Hochhlater voided his legal duty to protect Mr. Cartwright's rights.
>
> 10.) Recusal is required if the judge bears a bias or prejudice that might call into question his or her impartiality. United States v. Gamboa, 439 F.3d 796, 817 (8th Cir. 2006).
>
> 11.) Under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had involment [sic] in a critical decision regarding the defendant's case.
>
> 12.) The alleged bias and prejudice to be disqualifying, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the Judge learned from his participation in the case. Berger v. United States, 255 U.S. 22, 31.
>
> 13.) Under 28 U.S.C. § 1404(B) a civil action may be transferred from the division in which it is pending to any other division in the same district upon motion, stipulation, or consent of the parties.
>
> 14.) Pursuant to 28 U.S.C. § 636(b)(1)(A) a Judge may reconsider any pretrial matter designated to a magistrate judge to hear and determine where it was shown that the magistrate judge's order is clearly erroneous or contrary to law. See also Fed. R. Civ. P. 72(a).

(Doc. No. 18).

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein." 28 U.S.C. § 144. "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Under both recusal statutes, the substantive standard is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be

questioned." United States v. Studley, 783 F.2d 934, 940 (9th Cir.1986) (quoting Mayes v. Leipziger, 729 F.2d 605, 607 (9th Cir.1984) (citations omitted)).

When armed with all of the facts, no reasonable person would conclude that the undersigned harbors any bias against Plaintiff. Consequently, the undersigned's recusal is neither necessary nor warranted.

Plaintiff was in custody when he initiated both Cartwright I and the instant action. Consequently, he remains subject to the requirements of the Prison Litigation Reform Act regardless of his custodial status in his pending criminal case. See Jackson v. Ward Cnty. Offs., No. 1:12-CV-017, 2012 WL 3135376, at *2 (D.N.D. Mar. 27, 2012), report and recommendation adopted sub nom. Jackson v. Thompson, No. 4:12-CV-017, 2012 WL 3135409 (D.N.D. Aug. 1, 2012); see also Johnson v. Hill, 965 F.Supp. 1487, 1488 n. 2 (E.D. Va.1997) ("[T]he court finds that it must still conduct a section 1915A screening, for two reasons. First, plaintiff was a prisoner at the time he filed this action. Second, the suit was brought by plaintiff in his capacity as a prisoner; that is, it advances his concerns about alleged misconduct by prison officials and injuries received at the hands of another inmate."); Michalski v. Krebs, No. 09–492, 2010 WL 1032647 at *1 (S.D. Ill. March 17, 2010) ("At the time Plaintiff submitted this complaint, he was still confined at the Centralia Correctional Center and, therefore, the provisions of 28 U.S.C. § 1915A apply to his complaint."). Plaintiff's assertions that the undersigned's detention order in his criminal case informed the recommendations/rulings in his civil cases or vice versa and that he would have been freed of the PLRA's requirements if he had been released pending trial in his criminal case are therefore specious.

Plaintiff is correct that the undersigned did mention his criminal case in a report and

recommendation issued in Cartwright I. However, in so doing, he conveniently neglects to mention the context in which his criminal case was mentioned. In Cartwright I, Plaintiff had requested preliminary and permanent injunctive relief from staff at North Dakota State Penitentiary ("NDSP") and the North Dakota Department of Corrections and Rehabilitation ("NDDOCR"). Specifically, he sought a Court order directing NDSP and NDDOCR staff to immediately provide him with medical treatment he had previously requested but had allegedly been denied. The undersigned recommended that the Court deem his request for preliminary injunctive relief moot as it could take judicial notice of Plaintiff's pending federal criminal case and the fact that he was no longer incarcerated at the NDSP or in the custody of NDDOCR. Cartwright I at Doc. No. 47, pp. 6-7 ("Plaintiff was in NDDOCR custody at the NDSP when he initiated this action. The record reflects that he has since been released from NDDOCR custody and is currently incarcerated at the Ward County Detention Center in Minot, North Dakota, awaiting trial on state charges. As he is no longer incarcerated at the NDSP, Defendants are no longer providing for his medical care. There appears to be little prospect that he will be returning to the NDSP in the near future. His requests for preliminary and permanent injunctive relief against Defendants may be therefore be dismissed by the Court as moot."). It is well-settled that a Court "can sua sponte take judicial notice of its own records and files, and facts which are part of its public records" and that "[j]udicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it." Jacob v. Cotton, No. 4:20CV3107, 2021 WL 130953, at *1 n.1 (D. Neb. Jan. 14, 2021) (citing United States v. Jackson, 640 F.2d 614, 617 (8th Cir. 1981)).

Plaintiff also conveniently neglects to mention that he was afforded an opportunity to file an objection to the undersigned's report and recommendation in Cartwright I, that he did in fact file

an objection, and that the Court did not find his objection to be particularly persuasive as it adopted the undersigned's recommendation. See Cartwright I at Doc. Nos. 48 and 50.

Plaintiff's assertion that he has been found incompetent is unsupported by the record. At present all that Plaintiff has submitted is an opinion letter issued by a physician in 2017 about his competency to stand trial in two separate Missouri cases. As the undersigned noted in the order denying his previous request for counsel, it is unclear what if any weight this opinion was given as Plaintiff has provided no information regarding the disposition of his two Missouri cases. There is also a dearth of evidence to indicate that Plaintiff was found incompetent by any court or is currently receiving treatment for any medical illness or condition that could bear upon his ability to understand and actively participate in the current proceedings. Again, the opinion letter submitted by Plaintiff is dated 2017 and therefore sheds no light on his current condition.

Plaintiff's request for the undersigned's recusal appears to boil down to his disagreement with the undersigned's rulings. Such dissatisfaction is not a valid basis for recusal, however. See e.g., Leonard v. Monroe Cnty. Fla., 789 F. App'x 848, 851 (11th Cir. 2019) ( "[A] judge's adverse ruling – without more – is insufficient to demonstrate the requisite pervasive bias and prejudice against a party that would mandate recusal."). The United States Supreme Court has noted that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994); see also Moran v. Clarke, 296 F.3d 638, 649 (8th Cir. 2002) ("[a]n unfavorable judicial ruling... does not raise an inference of bias or require the trial judge's recusal").

In sum, the report and recommendation and/or orders issued by the undersigned in Plaintiff's previous cases in no way demonstrate bias or partiality in the instant case. Plaintiffs' motion for

recusal, reassignment, and change of venue is therefore denied. The undersigned shall now turn to Plaintiff's request for court-appointed counsel.

**C. "Motion for Appointment of Counsel, Guardian Ad Litem or Conservator Under Rule 17(c) and Motion to Stay Litigation"**

Plaintiff's instant motion for the appointment of counsel, guardian ad litem , or conservator mirrors the motion that he had filed on February 23, 2023, requesting court-appointed counsel. For the reasons set forth in undersigned's February 27, 2023, order, the undersigned concludes that the circumstances do not presently warrant the appointment of counsel, guardian ad litem, or conservator for Plaintiff. The undesigned further concludes there is no basis for staying this litigation.[1] Consequently, the undersigned denies Plaintiff's motion without prejudice. However, the undersigned shall extend Plaintiff's deadline to show cause or file an amended complaint until April 10, 2023. The undersigned shall now turn to the issue of Plaintiff's consent to the magistrate judge's exercise of jurisdiction.

**D. "Motion to Withdraw Consent to Have Case Handled by Magistrate Judge"**

A magistrate judge may conduct all proceedings in a civil matter "upon consent of the parties." 28 U.S.C. § 636(c)(1). "Such consent must be obtained from all parties to the litigation and a failure to obtain consent from all parties deprives a magistrate judge of jurisdiction." Barnett v. Hill, No. 1:19-CV-00008 JAR, 2019 WL 3343254, at *1 (E.D. Mo. July 25, 2019); see also Reid v. Missouri Dep't of Corr., No. 06-03104-CV-S-JTM, 2007 WL 9718094, at *1 (W.D. Mo. Jan. 31, 2007).

Federal Rule of Civil Procedure 73(b) provides that "[w]hen a magistrate judge has been

---

[1] Plaintiff's request to stay the litigation indefinitely is puzzling given the concerns he expressed in his complaint about alleged delays in obtaining medical care.

designated to conduct civil actions or proceedings, the clerk must give the parties written notice of their opportunity to consent under 28 U.S.C. § 636(c)." Fed. R. Civ. P. 73(b)(1). "To signify their consent, the parties must jointly or separately file a statement consenting to the referral." Id.

This case was directly assigned to the undersigned pursuant to this district's "Plan for Direct Assignment of Civil Cases to a Magistrate Judge."[2] The Clerk' Office sent notice of direct assignment to Plaintiff on January 18, 2023. (Doc. No. 4).

Using the form provided to him by the Clerk's office, Plaintiff filed notice on January 26, 2023, of his express waiver of his right to proceed before a district judge and his voluntary consent to the magistrate judge's exercise of jurisdiction. Plaintiff now requests leave to withdraw his consent. Although he does not articulate any particular reason why, he is obviously motivated by his dissatisfaction with the undersigned's rulings. In making his request, he correctly points out that Defendant has yet to consent to undersigned's exercise of jurisdiction. As this matter is still at the screening stage, Defendant has yet to be served and therefore has yet to receive written notice of her opportunity to consent under 28 U.S.C. § 636(c).

After consent is given, "[t]here is no absolute right, in a civil case, to withdraw consent to trial and other proceedings before a magistrate judge." Dixon v. Ylst, 990 F.2d 478, 480 (9th Cir. 1993); see also Carter v. Sea Land Servs., Inc., 816 F.2d 1018, 1020 (5th Cir. 1987); Rivera v. Rivera, 216 F.R.D. 655, 659 (D. Kan. 2003). However, both § 636(c)(6) and Rule 73(b) provide that the Court may, on its own for good cause or when a party shows extraordinary circumstances, vacate a referral to a magistrate judge. 28 U.S.C. § 636(c)(4); Fed. R. Civ. P. 73(b)(3). "'Good cause' and 'extraordinary circumstances' are high bars that are difficult to satisfy." E.D. v. Cnty. of Contra

[2] https://www.ndd.uscourts.gov/lci/Direct_Assignment_Plan.pdf

Costa, No. 20-CV-03014-SK (JSW), 2022 WL 1015992, at *2 (N.D. Cal. Apr. 5, 2022) (citing Branch v. Umphenour, 936 F.3d 994, 1000 (9th Cir. 2019)).

Courts have held that "extraordinary circumstances" are not shown where a motion to withdraw consent was motivated by a litigant's dissatisfaction with a magistrate judge's rulings. See Barbero v. TLC Prop. Mgmt., LLC, No. 19-03171-CV-S-DPR, 2019 WL 13203972, at *1 (W.D. Mo. July 2, 2019) (no extraordinary circumstances where plaintiff was unhappy about a court's order to amend her complaint to adequately state a claim upon which relief may be granted); Mello v. Unum Corp., No. 4:13CV2543 NCC, 2014 WL 360610, at *1 (E.D. Mo. Feb. 3, 2014) (denying a plaintiff's motion to revoke her consent despite the of the fact that service had yet to be effectuated and full consent attained); see also Milhous v. Metro. Gov't of Nashville & Davidson Cnty., 221 F.3d 1335 (6th Cir. 2000) (no extraordinary circumstances where plaintiff simply was displeased with magistrate judge's rulings on motions to dismiss); Rivera v. Rivera, 216 F.R.D. 655, 661 (D. Kan. 2003) (no extraordinary circumstances where obvious that motion was motivated by defendant's dissatisfaction with court's recent order granting plaintiff new trial); Moses v. Sterling Com., No. 2:99-CV-1357, 2003 WL 1869158, at *1 (S.D. Ohio Apr. 4, 2003) (no extraordinary circumstances where plaintiff's motion is motivated by dissatisfaction with certain rulings); O'Neal Bros. Constr. Co. v. Circle, Inc., 1994 WL 658468, *2 (E.D. La. Nov. 21, 1994) (no extraordinary circumstances where party is unhappy with decisions of magistrate judge and determines, in hindsight, that perhaps consent should not have been given and that district judge might have ruled more favorably). In Carter v. Sea Land Services, Inc., 816 F.2d 1018 (5th Cir. 1987), the court summed up its reasons for not allowing a plaintiff to withdraw her consent as follows:

> We are not persuaded that a litigant has ... a right [to withdraw consent]. We find nothing in the statute or the legislative history that requires continuing expressions

> of consent before a magistrate can exercise authority under a valid reference. Nor will we accept the slippery-slope invitation to read into the statute a rule that would allow a party to express conditional consent to a reference, thereby obtaining what amounts to a free shot at a favorable outcome or a veto of an unfavorable outcome. Any such rule would allow the party to hold the power of consent over the magistrate like a sword of Damocles, ready to strike the reference should the magistrate issue a ruling not quite to the party's liking. We will not countenance such fast and loose toying with the judicial system.

Id. at 1020–21.

It should be noted however, that, in the cases cited above, one party was seeking to withdraw consent after both parties had consented to magistrate judge jurisdiction. When confronted with a scenario where a plaintiff moved to withdraw consent before the other party had consented, the Ninth Circuit, in Gilmore v. Lockard, took a different tack than the Fifth Circuit in Carter and concluded that the plaintiff did not have to satisfy the extraordinary circumstances standard and that his motion should have been granted. Gilmore v. Lockard, 936 F.3d 857, 862 (9th Cir. 2019) (confronting a scenario where the plaintiff had filed his motion to withdraw consent after the defendants had denied consent, after the case was assigned to a district judge, and before defendants later consented to the magistrate judge's jurisdiction), It, reasoned:

> Allowing a party to withdraw consent without utilizing the good cause standard could indeed allow a litigant to "shop" between a magistrate and a district judge. The facts of this case suggest that might have been precisely what Gilmore sought to do when he filed his motion to withdraw after receiving an unfavorable ruling.
>
> Importantly, however, *Carter* is distinguishable. There, as in almost every case where a court reviews a ruling on a motion to withdraw consent, both parties had consented to magistrate judge jurisdiction. [Carter, 936 F.3d at 1020]. The *Carter* court worried about a litigant seeking to withdraw consent after both parties had consented and the magistrate judge had made determinative rulings pursuant to § 636(c). Here, by contrast, Defendants had not yet consented, and the magistrate judge had not made rulings outside of limited pretrial motions as provided in § 636(b). The concern over forum shopping between a magistrate judge and an Article III judge is lessened if the magistrate judge can make only nondispositive pretrial rulings.

Id.,

The Fourth Circuit has similarly concluded that a plaintiff need not demonstrate extraordinary circumstances in order to withdraw his consent to magistrate judge jurisdiction if the opposing parties have yet to consent, reasoning:

> [Section 636] does not address a party's withdrawal of consent before a transfer. Thus, it certainly does not impose a good cause standard for withdrawing consent. The only mention of good cause in § 636 comes in subsection (c)(4). That subsection provides that a district court may vacate the transfer "for good cause shown on its own motion, or under extraordinary circumstances shown by any party." 28 U.S.C. § 636(c)(4); *see also* Fed. R. Civ. P. 73(b)(3). But § 636(c)(4) only applies once a case has been transferred to the magistrate judge. It does not apply to one party's consent to referral when the other parties have not also consented. That there is a good cause requirement to vacate a referral once the case has been transferred and not before is significant. Congress knew how to impose a good cause requirement in connection with its control over magistrate judge jurisdiction. Yet it did not impose that requirement for a party's withdrawal of his or her consent before the other parties consented to magistrate judge jurisdiction. We decline to judicially create a requirement Congress did not impose.

See Muhammad v. Fleming, 29 F.4th 161, 166 (4th Cir. 2022)..

The holdings in Gilmore and Muhammad are not binding on this Court. They are nevertheless persuasive. Section 636(c) imposes no limitations on withdrawal before all parties have consented. Consequently, a showing of good cause or extraordinary circumstances is not required by Plaintiff in this instance and the decision to regarding his withdraw is left to the Court's discretion.

In the exercise of this discretion, the undersigned is inclined to permit Plaintiff to withdraw his consent.[3] At first blush, Plaintiff's motion appears to be a thinly veiled attack on the

---

[3] "Jurisdictions disagree about whether a motion to withdraw consent to magistrate judge jurisdiction should be resolved by the assigned magistrate judge or by a district judge." Pederson v. John Deere Electronic Solutions, Case No. 3:20-cv-051, 2021 WL 68057 01, at *1 (D.N.D. Feb. 23, 2021) (collecting cases). The Eighth Circuit has not ruled on this issue. See id. (magistrate judge denying a parties' motion to withdraw consent and recommending that the chief

undersigned's impartiality, an issue addressed above in the context of Plaintiff's motion for recusal. Nevertheless, Plaintiff's case has yet to move beyond initial screening and no dispositive orders have been issued in it by the undersigned. Moreover, Defendant has yet to give her consent to magistrate judge jurisdiction. Consequently, she is not prejudiced by Plaintiff's withdrawal of his consent. Finally, Plaintiff's withdrawal of his consent does not foreclose undersigned from addressing nondispostive pretrial matters or from submitting recommendations for the disposition of dispositive matters. See 28 U.S.C. § 636(b)(1)(A)-(C). In other words, Plaintiff's withdrawal of his consent will not operate as a back-door method of obtaining the undersigned's recusal.

## III. CONCLUSION

Chantel Hillstead shall be substituted in place of Defendant Jane Doe. The case caption shall be amended accordingly. Plaintiff's "Motion for Appointment of Counsel, Guardian Ad Litem or Conservator Under Rule 17(c) and Motion to Stay Litigation" (Doc. No. 15) and "Motion for Recusal and Motion to Assign a Different Judge and Motion to Transfer Venue" (Doc. No. 18) are **DENIED**. Plaintiff's "Motion to Withdraw Consent to Have Case Handled by Magistrate Judge" (Doc. No. 17) is **GRANTED**.

Dated this 10th day of March, 2023.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court

district judge conduct a de novo review).